```
              IN THE UNITED STATES DISTRICT COURT
             FOR THE NORTHERN DISTRICT OF INDIANA
                        HAMMOND DIVISION

UNITED STATES OF AMERICA      )
                              )
          Plaintiff,          )
                              )
     v.                       )       No. 2:05-CR-77
                              )
PAUL HERNANDEZ, et. al.       )
                              )
          Defendants.         )
```

## OPINION AND ORDER

This matter is before the Court on (1) Motion for New Trial and Supplement to Motion for Acquittal, filed by Kenneth Castaldi on September 28, 2006, and (2) Motion for New Trial and Supplement to Motion for Acquittal, filed by Paul Hernandez on September 28, 2006. For the reasons set forth below, the motions are **DENIED**.

BACKGROUND

Paul Hernandez ("Hernandez") and Kenneth Castaldi ("Castaldi") were indicted in a twenty-one count indictment for crimes related to the securing and misuse of a grant. Count 1 alleges that Hernandez and Castaldi engaged in mail fraud in violation of 18 United States Code sections 1341 and 2. Count 2 alleges that Paul Hernandez violated 29 United States Code section 501(c) by embezzling, stealing and unlawfully and willfully abstracting and converting to his own use and the use of two others the moneys, funds, securities, property and other assets of a labor organization. Counts 3 through 14 charge Hernandez and Castaldi with theft or embezzlement from an employee

benefit plan, in violation of 18 United States Code, sections 664 and 2.  Counts 15-20 charge Hernandez with six additional violations of 18 United States Code section 664.  Count 21 charges Paul Hernandez with making false statements, but the Government conceded it had not proved this count, and it was dismissed on Defendant's motion for judgment of acquittal made at the close of the Government's case.

On September 21, 2006, the jury found Hernandez guilty on counts 1 through 20 of the indictment, and Castaldi guilty on count 1 and counts 3 through 14 of the indictment.  The instant motions were timely filed seven days later, on September 28, 2006.  This Court initially ordered the government to respond by October 10, 2006, and Defendants to reply by October 17, 2006.  Castaldi, however, sought leave to supplement his motion with citations to the transcript.  Accordingly, Defendants were given until December 15, 2006 to obtain the transcript and file a supplement.  Because of a delay in obtaining the transcript, the deadline was extended until December 28, 2006.  Castaldi filed a supplement on December 28, 2006, and the government responded on January 11, 2007.  Hernandez opted not to file a supplement with this Court.  The motions are now fully briefed and ripe for adjudication.

DISCUSSION

The instant motions are brought both pursuant to Federal Rule of Criminal Procedure 33, and pursuant to Federal Rule of Criminal Procedure 29.  Federal Rule of Criminal Procedure 33 provides that

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. Pro. 33. To prevail on a motion for a new trial, a defendant must show that the verdict is against the manifest weight of the evidence. *United States v. Washington*, 184 F.3d 653, 657 (7th Cir. 1999). The court "must grant a new trial if [the] evidence 'preponderates heavily against the verdict such that it would be a miscarriage of justice to let the verdict stand.'" *Id.* (quoting *Untied States v. Reed*, 875 F.2d 107, 113 (7th Cir. 1989)).

Federal Rule of Criminal Procedure 29(c)(1) provides that "A defendant may move for a judgment of acquittal, or renew such a motion, within 7 days after a guilty verdict or after the court discharges the jury, whichever is later." Fed. R. Crim. Pro. 29(c)(1). Regardless of whether a motion for judgment of acquittal is made before submission to the jury or after, the standard is the same: whether there is relevant evidence (viewed in the light most favorable to the prosecution) from which the jury can reasonably find the defendant guilty beyond a reasonable doubt. *Reed*, 875 F.2d at 111; *Washington*, 184 F.3d at 657.

Legal Sufficiency of Indictment

Both Castaldi and Hernandez argue that the indictment is legally insufficient, in that it allegedly failed to properly name the victim. The problem with this argument is that, even if true, the challenge comes too late. A challenge to the sufficiency of the indictment must be made before trial, unless the indictment "is so defective that it

does not, by any reasonable construction, charge an offense for which the defendant is convicted." *See* Fed. R. Crim. P. 12(b)(3)(A); *United States v. Fernandez*, 282 F.3d 500, 508 (7th Cir. 2002)(citing *United States v. Gooch*, 120 F.3d 78, 80 (7th Cir. 1997)).

Even if the argument were not untimely, it would fail. Defendant Castaldi argues that counts 3-14 allege that Defendants "did embezzle, steal, and unlawfully and willfully abstract and convert to their own use ... the moneys ... and other assets of the Northwest Indiana Carpenters Joint Apprenticeship Committee..." Castaldi, however, claims that the evidence at trial showed that the grant did not belong to the Northwest Indiana Carpenters Joint Apprenticeship Committee ("JAC"). Rather, he argues it belonged to the Northwest Indiana District Council of Carpenters (citing the testimony of Amy McFadden, Teri VanZant, and Gerry Nannega). The Government points out that there was evidence to the contrary as well. Namely, that Larry Wojnarowicz ("Wojnarowicz") of Havey & Associates testified that the Grant Checking Account, which was controlled by Castaldi and Hernandez, was included on the official books of the JAC. Unfortunately, the Government did not provide this Court with a citation to where this appears in the evidence. Nonetheless, this Court has reviewed the transcript of Wojnarowicz's testimony, and believes that, even if not stated explicitly, it can be inferred that Wojnarowicz believed that the grant checking account was an asset of the JAC. The evidence also establishes that Defendants wrote checks to themselves, without JAC board approval. Thus, the evidence is sufficient for a jury to find that Defendants were stealing JAC funds.

Additionally, the Government claims that the purpose of the grant was to benefit the JAC, and that, a defendant can steal from the JAC if funds were intended for the JAC, even if the funds never got there. In support, the Government relies upon *United States v. Grizzle*, which held that, "the assets of employee benefit plans subject to ERISA include employee contributions to benefit plans which are withheld from employee paychecks and for deposit into their benefit plans, even though the contributions have not actually been delivered to the benefit plan.")  933 F.2d 943, 946-47 (11th Cir. 1991).  The Defendants did not argue against the legal principle suggested by the Government, and agreed to a jury instruction being given based on *Grizzle*.  Thus, this legal principle is not being questioned here. Unfortunately, the Government's claim that the grant was intended to benefit the JAC is not supported by any specific citation to the record.  While the Government refers this Court to the testimony of Dottie Nelson and Larry Wojnarowicz, no citations to the record are provided. Nonetheless, this Court's recollection of the trial is that there was evidence that the purpose of the grant was to benefit the JAC.  Furthermore, the Government contends that the receipts and expenses sent to the State of Indiana were expenses incurred by the JAC, and therefore they needed to be reimbursed to the JAC.  This is in accord with the Court's recollection.  Additionally, despite an opportunity to do so during the extended period of briefing that occurred in this matter, the Defendants offer no suggestion that the Government is wrong on these factual points.  Accordingly, this Court cannot find that the Defendants are entitled to either judgement of

-5-

acquittal or a new trial on the basis that the indictment is insufficient.

Mug Shot

The Government, in its opening and closing arguments, used a pictorial flow chart that showed pictures of Hernandez and Castaldi. These pictures were taken at the booking of Defendants on the present charges, and Defendants characterize them as "mug shots." Defendants argue that the presentation of pictures to the jury, under the circumstances of this case, constitutes reversible error. But, Defendants were not wearing prison garb or holding prison slates in the picture. In fact, there is nothing in the pictures that indicates they are incarcerated. While actual prison garb mug shots are often inadmissible, pictures that do not suggest incarceration are permissible. *See United States ex. rel Bleimehl v. Cannon*, 525 F.2d 414, 416 (7th Cir. 1975); *Untied States v. Gray*, 410 F.3d 338, 344-45 (7th Cir. 2005). Even pictures showing a defendant in police custody are permissible where they do not suggest prior criminal activity. *United States v. Allen,* 390 F.3d 944, 950 (7th Cir. 2004). This Court finds that the pictures do not suggest incarceration. Accordingly, it was not error to show the pictures to the jury during opening and closing arguments.

Hearsay Objections

Both Castaldi and Hernandez argue that this Court erred in sustaining several hearsay objections by the prosecution, and that the

cumulative nature of these errors prejudiced Defendants. Defendants argue that this Court's hearsay rulings prevented them from demonstrating that they were not concealing or hiding their actions, evidencing a clear conscience, and that they therefore lacked the intent required by law.

Hernandez' motion lists seven instances where this Court allegedly made erroneous hearsay rulings. But Hernandez failed to provide sufficient detail to enable this Court to assess whether any errors actually occurred. Although this Court granted each Defendant additional time to obtain the required transcripts and file supplemental briefs, Hernandez did not file a supplemental brief. As such, this Court cannot assess the alleged hearsay errors pointed to in Hernandez' brief (although some may overlap with those asserted by Castaldi, and to that extent, they are examined further below).

Castaldi points to six specific rulings that he believes deprived him of a fundamentally fair trial. Castaldi first cites to Joseph H. Coar's ("Coar") testimony. The question posed to Coar was "Do you remember Mr. Castaldi telling you that that [referring to a forklift] was to be purchased from the grant account." (Trial Transcript, V. 4 at 62-65.) The Government objected based on hearsay, and the objection was sustained after much argument from counsel regarding what constitutes hearsay. Castaldi argued that it was irrelevant whether the grant account was used to pay for the forklift; what mattered was that a trustee had heard of the grant account. Because Castaldi annunciated a purpose for the testimony other than its truth, it may have been error to sustain this objection. However, this error

alone does not rise to the level necessary to justify either a new trial or judgment of acquittal.

Next, Castaldi cites to the testimony of James Hornak ("Hornak"). Hornak was asked "Isn't it true, that he [referring to Mr. Nannega] pretty much told the other trustees how to vote?" (Trial Transcript V. 4 at 115.) The Government objected on the grounds of hearsay, and the objection was sustained. Castaldi claims error because the objection was made regarding a question that did not concern a statement. The more fundamental problem with Castaldi's argument is that, even if this Court's evidentiary ruling was error in this instance, this testimony would not have furthered Castaldi's alleged defense. In other words, whether someone told the trustees how to vote does not show that Castaldi lacked the requisite intent to be convicted of the crimes charged.

With regards to Craig Miller ("Miller"), Castaldi argues that this Court erroneously upheld a hearsay objection when the question asked was not regarding what was said, but if something was said. Miller was asked "And to your knowledge, did Mr. Castaldi ever get any complaints about your teaching?" (Trial Transcript V. 4 at 162.) But, like the argument made with regards to Hornak, this error, if any, does not show that Castaldi lacked the requisite intent to be convicted of the crimes charged.

Castaldi also asserts that this Court issued an erroneous hearsay ruling during the testimony of Jerry Cooley ("Cooley"). Cooley was asked "Did you ever learn that the grant was approved." (Trial Transcript V. 4 at 179.) The Government objected on the grounds that

the response calls for hearsay.  But, Castaldi never stated that the question was not being asked for the truth of the matter.  It was Castaldi's obligation to make this Court aware that there was some purpose for the out of court statement other than the truth of the matter.  Because Castaldi failed to annunciate a reason other than the truth of the matter at the time the Government made its objection, Castaldi can not now claim error on the part of this Court.

Furthermore, Castaldi asserts that an error occurred when this Court sustained a hearsay objection during William Hasse's ("Hasse") testimony.  Hasse was asked "At one of those meetings, you learned of the scaffolding grant."  Hasse answered with "If I didn't hear about it at the meeting, I heard about it after the meeting.  It indicates I did not attend the meeting, but I did hear about it."  Hasse was then asked, "And you learned of that from Mr. Castaldi?"  (Trial Transcript V. 4 at 207-211.)  The Government objected on the basis of hearsay.  Castaldi argued that the question was not asked for the truth of the matter asserted (not for whether they got the grant or not), but to show he had heard about the grant.  In other words, that Castaldi was not trying to hide the grant.  This may have been error.  But again, like any error committed regarding the testimony of Hornak, this error by itself it not so significant that a new trial or judgment of acquittal is required.  Even in combination with any error committed regarding Hornak's testimony, the error remains insignificant.

Lastly, Castaldi alleges that this Court erred in sustaining a hearsay objection during Michael Simko's ("Simko") testimony.  Simko

was asked "She [referring to Dottie Nelson] gave you the explanation that she was working over time, right?" (Trial Transcript V. 4 at 264-272.)  Castaldi claims that the question was asked to understand the state of mind of the witness, not to determine whether she was really working overtime.  Again, the problem with this is that, even if this Court did err, Simko's state of mind is not Castaldi's state of mind.  Simko was not on trial, and his state of mind does not show that Castaldi lacked the requisite intent to be convicted.  Thus, even if error, the alleged error would not support Castaldi's theory of defense.

In sum, although this Court may have erred in a few instances with regards to its hearsay rulings, those errors did not substantially prevent Defendants from presenting their evidence and advancing their theory of the case.  Ample evidence existed from which the jury could conclude that the Defendants were guilty as charged of Counts 1-20 of the indictment.  As such, Defendants have not demonstrated that they are entitled to either judgment of acquittal or a new trial on the basis of this Court's allegedly erroneous hearsay rulings.

Castaldi's Mail Fraud Conviction

Castaldi argues that there was insufficient evidence to show that the mails were used to execute a scheme to defraud.  Specifically, Castaldi argues that Count 1 charges him with scheming to defraud during the grant period, but that the proof presented at trial focused on what happened after the grant period.  The Government argues that

Castaldi knew (or at least that it was reasonably foreseeable - which is all that is required[1]) that the grant checks were being mailed from Indianapolis to Hobart during the grant period.  Additionally, a review of the tapes of the testimony of Dottie Nelson reveals that the grant checks were sent to the Hobart office.  This Court finds the evidence was sufficient to show that the mails were used to execute the alleged scheme to defraud.

Other Arguments

In addition to the above, each Defendant has renewed arguments raised in the oral Rule 29 motion at the close of the Government's case.  Neither Hernandez nor Castaldi offered any additional argument or legal authority to support his position.  This Court has reviewed the transcript of the Rule 29 motion, and finds no error.  Accordingly, this Court stands by its previous ruling on the arguments made in the previous motions for judgment of acquittal.

**DATED: February 15, 2007**         /s/RUDY LOZANO, Judge
                                     **United States District Court**

---

[1]*United States v. Koen*, 982 F.2d 1101, 1107 (7th Cir. 1992).